UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
HYACINTH LACEY,

                Plaintiff,                              MEMORANDUM
                                                            AND ORDER

   -against-
                                                            13 CV 4098 (RML)

TARGET CORPORATION and
TARGET STORES,

                Defendants.
-----------------------------------------------------X

LEVY, United States Magistrate Judge:

        Defendant Target Corporation ("Target" or "defendant") moves for summary judgment, and plaintiff Hyacinth Lacey ("plaintiff") cross-moves for spoliation sanctions in the form of an adverse inference. This case is before me on consent of the parties. (See Consent to Jurisdiction by U.S. Magistrate Judge, dated Nov. 20, 2014.) I heard oral argument on March 26, 2015. (See Transcript of Oral Argument, dated Mar. 26, 2015 ("Tr.").) For the reasons stated below, Target's motion for summary judgment is granted, and plaintiff's motion for sanctions is denied.

# BACKGROUND AND UNDISPUTED FACTS[1]

Defendant removed this personal injury case from New York State Supreme Court, Kings County, in July 2013 on diversity grounds. In her complaint, plaintiff alleges that she sustained an injury on September 7, 2012 at a Target store in Brooklyn, New York when she "was caused to slip and lose her balance" due to a dangerous condition, namely, "produce, food, dirt, and debris" on the floor. (Verified Complaint, dated June 18, 2013 ("Compl."), ¶ 17.) In her Bill of Particulars, plaintiff identifies the condition as "slippery, smashed, old and dirty pieces of apple[,] including . . . apple rind on the floor of the produce section." (Bill of Particulars, dated June 18, 2013, ¶ 4.) The parties have completed fact discovery. Expert discovery was deferred until after a decision on the summary judgment motion, which concerns liability only.

It is undisputed that plaintiff was a customer in the Target store at 1598 Flatbush Avenue in Brooklyn, New York on September 7, 2012 at approximately 7:00 p.m. (Defendant's Statement of Material Facts Pursuant to Local Rule 56.1, dated Jan. 23, 2015 ("Def.'s Rule 56.1 Statement"), ¶ 2; Plaintiff's Counter-Statement of Material Facts Pursuant to Local Rule 56.1, dated Feb. 11, 2015 ("Pl.'s Rule 56.1 Statement"), ¶ 2.) Plaintiff spent some time shopping and

---

[1] The following facts, upon which plaintiff's complaint is based, are undisputed or deemed admitted, unless otherwise noted. Both sides have served and filed a Statement of Material Facts, in compliance with Local Civil Rule 56.1(a). The rule states that upon any motion for summary judgment, "there shall be annexed to the notice of motion a separate, short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried." Rule 56.1(b) then requires any party opposing summary judgment to include "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Under Rule 56.1(c), all "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless specifically controverted by . . . the statement required to be served by the opposing party." See AAI Recoveries, Inc. v. Pijuan, 13 F. Supp. 2d 448, 449–50 (S.D.N.Y. 1998); Montalvo v. Sun Roc Corp., 179 F.R.D. 420, 421–23 (S.D.N.Y. 1998); see also T.Y. v. N.Y. City Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009).

was walking down the main aisle of the store, known as the "racetrack," at 7:51 p.m. when she slipped, but did not fall to the ground. (Def.'s Rule 56.1 Statement ¶ 3; Affirmation of Alice Spitz, Esq., dated Jan. 23, 2015 ("Spitz Aff."), Ex. H. (video)). Plaintiff reported the incident to the Leader on Duty, Lakeisha Swaby. Ms. Swaby completed a Guest Incident Report, which contains plaintiff's description of the cause of her slip as "apple & apple skin" on the floor. (Def.'s Rule 56.1 Statement ¶ 7; Spitz Aff., Ex. M.)

## DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). No genuine issue of material fact exists where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Lovejoy–Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which it believes demonstrates the absence of a genuine issue of material fact. Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform the

"threshold inquiry of whether there is the need for a trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986). If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(B). The non-moving party must make a showing sufficient to establish the existence of each element constituting its case. See Celotex, 477 U.S. at 322–23 ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Statements that are devoid of specifics and evidence that is "merely colorable" are insufficient to defeat a properly supported motion for summary judgment. See Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); see also Harlen Assoc. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is insufficient to preclude the granting of [a summary judgment] motion.").

B. Plaintiff's Negligence Claim

Plaintiff bases her negligence claim on Target's alleged maintenance of a "condition dangerous and defective." (Compl. ¶ 17.) Negligence is governed by New York law, which requires a plaintiff to establish that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty, and (3) the plaintiff suffered proximately caused damages. King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir. 1997). In a slip-and-fall case, a plaintiff must demonstrate that the defendant created the condition that caused the accident, or that the defendant had actual or constructive notice of the condition and failed to remedy it. Feis v. United States, 484 F. App'x 625, 628 (2d Cir. 2012) (citing Bykofsky v. Waldbaum's Supermarkets, Inc., 619 N.Y.S.2d 760 (2d Dep't 1994)).

Finding that a defendant created the condition requires "some affirmative act" on the part of the defendant. Gonzalez v. Wal–Mart Stores, Inc., 299 F. Supp.2d 188, 192 (S.D.N.Y. 2004) (citing Fink v. Bd. of Ed., 498 N.Y.S.2d 440 (2d Dep't 1986)). Thus, courts typically grant summary judgment for the defendant where there is evidence that a hazard existed, but no evidence as to how it was created or who was responsible for it. See, e.g., Cousin v. White Castle Sys., Inc., No. 06 CV 6335, 2009 WL 1955555, at *6–7 (E.D.N.Y. July 6, 2009) (granting summary judgment where, aside from the presence of a folded-up caution sign and a self-service beverage station, there was no evidence of "any employees carrying or handling liquids within the interior of the restaurant at any time prior to or after the fall and there [was] no evidence of employees mopping, making repairs, or engaging in any other activity that could have caused a puddle to form"); Buskey v. Boston Mkt. Corp., No. 04 CV 2193, 2006 WL 2527826, at *5 (E.D.N.Y. Aug. 14, 2006) (no triable issue of material fact where plaintiff slipped on water in a restroom and there was a bucket behind a toilet, but there was no indication that any nearby employee had been fixing a leaking pipe).

Target maintains that there is no evidence in the record to show that its employees created the condition, or that it had actual or constructive notice of any dangerous condition. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment on Liability Only, dated Jan. 23, 2015 ("Def.'s Mem.").) Plaintiff does not claim that there is evidence in the record that Target created the condition, or that any employee had actual notice of it before the accident. The sole issue, therefore, is whether a reasonable jury could find that Target had constructive notice of the condition.

"To constitute constructive notice, a defect must be visible and apparent and it must

exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Gordon v. Am. Museum of Natural History, 492 N.E.2d 774 (N.Y. 1986). In support of its argument that it had no constructive notice, Target has submitted a security videotape showing plaintiff's activities shortly before the incident, as well as a partial view of plaintiff's slip[2] and its aftermath. (Affidavit of Rosarion Saintelme, sworn to Jan. 9, 2015 ("Saintelme Aff."), annexed to the Spitz Aff. as Ex. J; Spitz Aff., Ex. H (video); Id., Ex. I (still images from video).) The video does not show the floor of the aisle where plaintiff slipped. Thus, it does not show how the apple pieces came to be on the floor, how long they were there, how plaintiff actually slipped, or the condition of the floor after the accident. It appears undisputed that no one reported a condition on the floor, and no other customers slipped or fell in that area. In addition, plaintiff testified in her deposition that she did not see the apple pieces on the floor before she slipped. (Deposition of Hyacinth Lacey, dated Jan. 9, 2014, annexed to the Spitz Aff. as Ex. C ("Lacey Dep."), at 58.)

There is no dispute that plaintiff slipped on pieces of apple. After the incident, all of the witnesses, including Target's employees, observed pieces of apple on the floor where plaintiff had slipped. (See Deposition of Walter Lemon, dated Nov. 13, 2014, annexed to the Spitz Aff. as Ex. G ("Lemon Dep."), at 16 (stating that he observed an "[a]pple peel" on the floor after the incident); Deposition of Lakeisha Swaby, dated Jan. 15, 2014, annexed to the Spitz Aff. as Ex. E, at 37 (stating that she "observed food particles on the floor" that "appeared to look mushy. . . . It looked like mushy particles of an apple" and was "a dark yellow."); Deposition of Gally Droiville,

---

[2] The video shows that plaintiff slipped but did not fall. (Spitz Aff., Ex. H.)

dated Aug. 18, 2014, annexed to the Spitz Aff. as Ex. F ("Droiville Dep."), at 20 (testifying that "at first appearance it didn't look that anything was on the floor," but that he then saw "apple . . . . But a little skin."); Deposition of Suzette Callender, dated Oct. 16, 2014, annexed to the Spitz Aff. as Ex. D, at 25 (stating that, after plaintiff's slip, she observed "the thing on the ground . . . . It was a piece like a green something on the ground . . . [r]ight where she fell . . . . I don't know what it was."); Lacey Dep. at 57-58 ("I observed the area wet, and the apple skin was spread out as if it, you know, a good bit of apple skin on the floor, it was wet. . . . It was dark, like brown, and you could see it's apple and apple skin."); see also Affirmation of Michael B. Palillo, Esq., dated Feb. 11, 2015, Ex. I (cell phone photos of pieces of apple taken by plaintiff immediately after the accident).

Under New York law, "[t]he mere existence of a foreign substance, without more, is insufficient to support a claim of negligence." Segretti v. Shorenstein Co., East L.P., 682 N.Y.S.2d 176, 178 (1st Dep't 1998). To get to a jury, plaintiff must provide some basis for an inference that the apple pieces were there long enough to blame defendant for the accident. See Casierra v. Target Corp., No. 09 CV 1301, 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) ("For all we know, the lotion may have been on the floor for a long time, or it may have spilled moments before Casierra slipped on it. In short, 'it would be speculative to infer that [the lotion] had been on the floor for an appreciable length of time.'") (quoting Kraemer v. K–Mart Corp., 641 N.Y.S.2d 130, 130 (2d Dep't 1996)); see also Casiano v. Target Stores, No. 06 CV 6286, 2009 WL 3246836, at *4-5 (E.D.N.Y. Sept. 24, 2009) (granting summary judgment against plaintiff who slipped on laundry detergent but produced no evidence as to how long the detergent was on the floor).

Successful slip-and-fall plaintiffs meet their burden in different ways, often by producing circumstantial evidence from which a jury could infer that the defective condition existed for a period of time before the accident. See, e.g., Nadal v. BJ's Wholsale Club, Inc., No. 10 CV 2931, 2012 WL 4328377, at *3 (E.D.N.Y. Sept.19, 2012) (denying summary judgment where, inter alia, banana on floor was smashed and dirty and aisle had not been inspected for approximately forty-five minutes); Negri v. Stop & Shop, Inc., 480 N.E.2d 740, 741 (N.Y. 1985) (denying summary judgment where the plaintiff slipped on baby food that was "dirty and messy," and the aisle had not been cleaned or inspected for at least fifty minutes prior to the accident); Colt v. Great Atl. & Pac. Tea Co., 618 N.Y.S.2d 721, 722 (1st Dep't 1994) (denying summary judgment where plaintiff slipped and fell on vegetable debris in a supermarket produce lane, and there was evidence that the floor in the produce lane was commonly littered); Padula v. Big V Supermarkets, Inc., 570 N.Y.S.2d 850, 851 (3d Dep't 1991) (upholding jury verdict in favor of plaintiff who slipped on a wet supermarket floor, where evidence suggested that the water accumulated gradually via customers' wet feet and shopping carts).

Here, plaintiff claims that the condition must have existed "for a sufficient length of time for [Target's] employees to discover and remedy it" because it was near the produce section, and there is some testimony (mostly from plaintiff herself) that the apple pieces were brown, and therefore oxidized. (Pl.'s Mem. at 27.) On the other hand, some witnesses described the apple as "fresh" and wet with juice. (Droiville Dep. at 32-36; Lemon Dep. at 17.) Regardless, this evidence does not raise a material question of fact as to the length of time the apple was on the floor, as it could have been brown and oxidized before it fell on the floor (for example, if a

customer dropped it).[3]

In sum, a verdict in plaintiff's favor, based solely on this record, would constitute speculation, rather than a finding of fact. The record is devoid of any facts tending to show that the apple pieces were on the floor for any appreciable length of time. On the evidence presented, the debris that purportedly caused plaintiff's slip could have been on the floor for a long period of time, or it could have landed there only moments before plaintiff slipped on it. Consequently, plaintiff has not identified any evidence that raises a triable issue of fact as to constructive notice.

C. Duty to Inspect

Plaintiff also argues that Target violated its duty to conduct reasonable and timely inspections of the premises. (Pl.'s Mem. at 31-43.) "New York common law obligates a landlord or owner 'to use a reasonable care to inspect and repair common areas,' and charges such landlord or owner with constructive 'notice of the dangerous conditions which a reasonable inspection would have discovered." Williams v. Matrix Fin. Servs. Corp., 158 F. App'x 301, 303 (2d Cir. 2005) (quoting Wynn ex rel. Wynn v. T.R.I.P. Redevelopment Assocs., 745 N.Y.S.2d 97 (3d Dep't 2002)); see also Torres v. United States, No. 09 CV 5092, 2010 WL 5422547, at *3 (S.D.N.Y. Dec. 23, 2010) ("Under New York common law, landlords or owners of a property, commercial or residential, have an obligation to maintain the common areas in a reasonably safe condition and

---

[3] Plaintiff testified that she "would estimate it as a quarter of an apple," i.e., not a whole apple. (Lacey Tr. at 59.) This would suggest that she slipped on apple slices. Target carried prepackaged apple slices in its "market" area, about five aisles away from the location of the accident. (Defs.' Rule 56.1 Statement ¶ 25; Droiville Dep. at 15.) Target employee Gally Droiville testified that he regularly saw Target customers eating apple slices while shopping. (Droiville Dep. at 42.) There is no evidence in the record to indicate whether the apple pieces at issue here originated in the store, and the court cannot speculate about where the apple came from or how it came to be on the floor.

have a duty to use reasonable care to inspect and repair common areas."). Relying on this doctrine, plaintiff asserts that Target should be charged with constructive notice of the condition due to its failure to conduct reasonable inspections of the "market" area of the store. (Pl.'s Mem. at 31-43.)

Target admits that it owns and operates the store at 1598 Flatbush Avenue in Brooklyn, New York (see Def.'s Rule 56.1 Statement ¶ 1), and does not deny that it had a duty to maintain the premises in a reasonably safe condition, which includes conducting reasonable inspections. See Tuthill v. United States, 270 F. Supp. 2d 395, 400 (S.D.N.Y. 2003) (finding a genuine issue of fact as to whether the defendant's inspections of snow and ice in parking lot were unreasonable, "which would render the issue of actual or constructive notice irrelevant") (citing Meyer v. State of New York, 403 N.Y.S.2d 420 (N.Y. Ct. Cl. 1978)). On the other hand, a defendant is not expected to continually patrol its premises "24 hours a day," even where a problem is recurring. Pfeuffer v. New York City Housing Auth., 940 N.Y.S.2d 566, 569 (1st Dep't 2012) (holding that summary judgment should have been granted in favor of defendant where the record reflected that it addressed accumulation of debris and liquids in stairwell "by cleaning up garbage and spills daily and inspecting the stairs twice a day"). Rather, the duty to inspect is dependent on the circumstances. Id. (citing DeJesus v. New York City Housing Auth., 861 N.Y.S.2d 31 (1st Dep't), aff'd, 901 N.E.2d 752 (N.Y. 2008)).

Here, the evidence in the record shows that Target retained a company, All Jersey, to conduct overnight floor cleaning. (Def.'s Rule 56.1 Statement ¶ 21.) In addition, Target employees performed routine patrols every fifteen minutes, during which they would pick up or clean any debris or spills. (Id. ¶ 22.) Target employee Gally Droiville testified that he did not have a specific memory from the date and time of plaintiff's slip but believed he was in the aisle where

plaintiff slipped approximately fifteen minutes before the accident. (Droiville Dep. at 18 ("I was doing my routine walk, which is about every 15 minutes I go from one aisle to another to . . . greet guests or to see, you know, what needs to be fixed."); see also id. at 36-37.) Moreover, less than sixty seconds after the incident occurred, two Target employees, Gally Droiville and Walter Lemon, responded to plaintiff at the accident scene (Def.'s Rule 56.1 Statement ¶ 26; Spitz Aff., Ex. H), which indicates that they were nearby. Regardless, even assuming a reasonable inspection had not taken place, plaintiff has not shown that a reasonable inspection would have discovered the condition, as she cannot establish the length of time that the condition was there to be discovered. Accordingly, Target has met its burden of showing the absence of a genuine issue of material fact on this issue.

### D. Spoliation

In addition to opposing defendant's motion for summary judgment, plaintiff cross-moves for spoliation sanctions against Target in the form of an adverse inference, on the ground that Target failed to preserve a surveillance video showing the aisle where plaintiff slipped. It is undisputed that a videotape of the exact moment when plaintiff slipped was preserved, and defendant has submitted it on DVD. Thus, Target did comply with its obligation to preserve video footage of the accident. See Gleason v. Marriot Hotel Servs., Inc., No. 11 CV 6295, 2013 WL 4573905, at *2 (S.D.N.Y. Aug. 26, 2013) (explaining that the law requires a defendant who maintains video cameras to preserve video surveillance footage "'of plaintiff's accident'—put otherwise, the video that 'recorded [plaintiff's] fall'") (quoting Matteo v. Kohl's Dep't Store, No. 09 CV 7830, 2012 WL 760317 (S.D.N.Y. Mar. 6, 2012)).

"Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Sanctions against a party who spoliates evidence may be imposed pursuant to FED. R. CIV. P. 37(b) as well as through the court's inherent powers. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002); West, 167 F.3d at 779. In situations where sanctions are warranted, district courts have broad discretion in "crafting a proper sanction for spoliation." West, 167 F.3d at 779; see also Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis.") (internal citation omitted). The selected sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." West, 167 F.3d at 779; see also Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) ("If these elements are established, a district court may, at its discretion, grant an adverse inference jury instruction insofar as such a sanction would 'serve [ ][the] threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation.") (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2d Cir. 2001)).

"[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a

reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp., 306 F.3d at 107. An adverse inference is "an extreme sanction and should not be imposed lightly." Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008); see also Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 219 (S.D.N.Y. 2003) ("Zubulake IV" ) ("In practice, an adverse inference instruction often ends litigation–it is too difficult a hurdle for the spoliator to overcome."). I will address each element in turn:

    1. Duty to Preserve

A party seeking an adverse inference instruction based on the spoliation of evidence must first show "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." Residential Funding Corp., 306 F.3d at 107. A duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd., 247 F.3d at 436. "When a party may be deemed to be on notice is a function of the variable chronologies along which issues develop in a law suit." Abramowitz v. Intra–Boro Acres Inc., No. 98 CV 4139, 1999 WL 1288942, at *3 (E.D.N.Y. Nov.16, 1999); see also Essenter v. Cumberland Farms, Inc., No. 09 CV 0539, 2011 WL 124505, at *7 (N.D.N.Y. Jan. 14, 2011) ("[T]here is no doubt that a video depicting the time before, during, and after an incident is relevant to determine what actually happened at the moment the injury occurred."); Zubulake IV, 220 F.R.D. at 217 ("While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.").

In this case, plaintiff was walking in the main aisle of the store, known as the "racetrack," when she slipped. (See Spitz Aff., Exs. H, I, M.) Plaintiff contends that there are a "number of ceiling mounted surveillance domes strategically placed to capture footage of the 'racetrack'– main aisle, yet the only video footage of the Plaintiff was taken from an obscure side aisle angle." (Pl.'s Rule 56.1 Statement ¶ 4.) She argues that video footage from those ceiling mounted surveillance cameras–which would have shown the exact area where plaintiff slipped–was destroyed. (Pl.'s Mem. at 2.)

Pursuant to Target's video recycling policy, any portion of a video not expressly preserved is erased after thirty days. (See Saintelme Aff. ¶ 8.) According to Target's Assets Protection Specialist, when an accident occurs in a store, the Leader on Duty is required to notify the Assets Protection Team Member, who then reviews the captured video to attempt to locate recordings of the incident itself, the persons involved in the incident, and their activities prior to, during, and after the incident. (Id. ¶ 3.) Not all of the dome ceiling cameras within the store contain active cameras; the positions of the cameras change periodically based on "proprietary information," which Target does not share with the public. (Id. ¶ 4.) In this case, Assets Protection Team Member Shawn Williams (who is no longer a Target employee) was notified of the incident and reviewed the video for September 7, 2012. He captured forty minutes of video, including thirty-one minutes before the incident and nine minutes after. (Id. ¶ 5.) Those videos were downloaded to a disc, submitted with Target's motion, and viewed in the courtroom during oral argument.

Target states that "there was not an active camera in the main aisle across from the dry groceries where the incident occurred . . . , and there is generally no such camera positioned at

that location since produce is not a primary focus of Asset Protection." (Id. ¶ 9.) In other words, "no active camera was in position to capture the actual condition of the floor itself in the aisle where plaintiff's accident occurred." (Id.; see also Tr. at 13-14 (counsel representing that "[t]here is no other angle. There are no other active cameras . . . .There was no active camera in position to capture the actual condition of the floor where the accident occurred.").

In sum, there is no evidence in the record that Target violated its duty to preserve video footage. Although plaintiff claims that other cameras must have covered the area, she cites no evidence to support that contention.

### 2. Culpable State of Mind

Briefly, "[e]ven where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." In re WRT Energy Sec. Litig., 246 F.R.D. 185, 195 (S.D.N.Y. 2007). On the issue of culpability, the Second Circuit has determined that a "case-by-case approach to the failure to produce relevant evidence" is warranted since "[s]uch failures occur 'along a continuum of fault–ranging from innocence through the degrees of negligence to intentionally.'" Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999) (quoting Welsh v. United States, 844 F.2d 1239, 1246 (6th Cir. 1988)). In this Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'" Residential Funding Corp., 306 F.3d at 108 (quoting Byrnie, 243 F.3d at 109).

In this case, if plaintiff could show that Target was on notice of her purported

negligence claim[4] and failed to preserve crucial video footage, that would likely be sufficient to show negligence. See Poux v. Cnty. of Suffolk, No. 09 CV 3081, 2012 WL 1020302, at *20 (E.D.N.Y. Mar. 23, 2012) (concluding that if defendant had an obligation to preserve videotapes, its conduct in recycling those tapes pursuant to a tape retention policy was, at most, negligent); Zubulake IV, 220 F.R.D. at 218 ("Once a party reasonably anticipates litigation, it must suspend its routine [ ] retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant [materials]."); but see Gutierrez-Bonilla v. Target Corp., No. 08 CV 3985, 2009 WL 5062116, at *4 (E.D.N.Y. Dec. 16, 2009) ("In the absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned for discarding items in good faith and pursuant to its normal business practice.") (internal quotation marks and citation omitted).

However, the evidence would not be sufficient to find gross negligence.[5] The Second Circuit has "reject[ed] the notion that a failure to institute a 'litigation hold' constitutes gross negligence per se." Chin, 685 F.3d at 162. Therefore, even if plaintiff could show that Target destroyed video footage of the incident, there would be insufficient evidence to support a

---

[4] As noted, plaintiff did complete an accident report at Target with the Leader on Duty, Lakeisha Swaby. This was sufficient to place Target on notice of potential litigation. See Siggelko v. Kohl's Dep't Stores, Inc., No. 06 CV 2281, 2009 WL 750173, at *3 (E.D.N.Y. Mar. 17, 2009) ("Assuming that Plaintiff suffered some injury, Kohl's could have anticipated that Plaintiff would file a lawsuit.").

[5] If there were evidence of gross negligence, as opposed to merely negligence, plaintiff would face a lower hurdle in meeting the relevance element of her claim. See Thaqi v. Wal-Mart Stores E., LP, No. 09 CV 755, 2014 WL 1330925, at *9 (E.D.N.Y. Mar. 31, 2014); cf. Residential Funding Corp., 306 F.3d 99 at 109 ("[W]here a party seeking an adverse inference adduces evidence that its opponent destroyed potential evidence (or otherwise rendered it unavailable) in bad faith or through gross negligence (satisfying the 'culpable state of mind' factor), that same evidence of the opponent's state of mind will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party (satisfying the 'relevance' factor).").

finding that Target was grossly negligent in failing to preserve the surveillance video. See Simoes v. Target Corp., No. 11 CV 2032, 2013 WL 2948083, at *6 (E.D.N.Y. June 14, 2013) (declining to find Target grossly negligent in allowing surveillance video to be recycled).

### 3. Relevance

The last element of a spoliation claim requires the innocent party to establish that the destroyed materials were relevant to his or her claims or defenses. See Residential Funding Corp., 306 F.3d at 108. For purposes of this element, relevance "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." Id. at 108–09. The moving party "must show through extrinsic evidence that the destroyed evidence would have been favorable to its case." Curcio v. Roosevelt Union Free Sch. Dist., 283 F.R.D. 102, 112 (E.D.N.Y. 2012); see also Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J., 601 F. Supp. 2d 566, 570 (S.D.N.Y. 2009) ("For the purpose of spoliation, 'relevant' means that the evidence must be of the sort that a reasonable jury could find harmful to the spoliator's case.").

Plaintiff articulates reasons why the missing videotape would be germane to a case where constructive notice of a dangerous condition is at issue. (Pl.'s Mem. at 18-19.) Plaintiff asserts that the additional footage would have shown how the apple came to be on the floor, how long it remained on the floor, or if any Target employee inspected the area where plaintiff slipped. (Id.) However, to receive an adverse inference, plaintiff is obligated to provide evidence showing that the pre-fall surveillance video would have been favorable to her case.

As an initial matter, it is not certain that the surveillance video would have captured how the apple ended up on the floor or how long it remained there. Even assuming, however, that

the video would have indicated how the apple ended up on the floor or how long it remained there, such additional footage could have been favorable to either party's case. While it is possible that the video would have shown that a Target employee saw the apple on the floor long before the incident and failed to remove it, it is equally possible that it would have shown that the apple pieces dropped out of a customer's shopping cart or bag just moments before plaintiff's slip. See Simoes, 2013 WL 2948083, at *7 (relevance element not satisfied where missing surveillance video could have been favorable to either party's case). Thus, even if plaintiff could show that Target captured video of the aisle where she fell and later destroyed that video, she could not meet her burden of showing relevance. Accordingly, plaintiff's motion is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's motion for spoliation sanctions is denied.

SO ORDERED.

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
May 12, 2015